No. 23973.

DARCHESTER HARRIS, ALSO KNOWN AS CHESTER HARRIS *v.*
THE PEOPLE OF THE STATE OF COLORADO.
(484 P.2d 1223)

Decided May 17, 1971.

Adams, Abbot & Jensen, Allen N. Jensen, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Michael T. Haley, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Kelley delivered the opinion of the Court.

Plaintiff in error, defendant in the trial court, was convicted by a jury on two counts of assault with a deadly weapon, one on a Mrs. Reeves, and one on a Mrs. Miller, and sentenced from four and one-half to five years on each count, the sentences to be served consecutively.

Two counts of assault with intent to commit rape were dismissed, and the jury found him not guilty of two charges of assault with intent to commit murder. The case is here on writ of error.

The defendant asserts prejudicial error occurred at his trial in the following respects:

"I. There was insufficient evidence upon which a verdict of guilty could be founded as to the charges of assault with a deadly weapon.

"A. No tests were made of the knife taken from the Plaintiff in Error to determine what, substances were on it.

"B. The Plaintiff in .Error was never given an opportunity to confront the complaining witness, Aletha Diane Miller.

"II. The competency of the witness, Seena Gay Reeves, was not properly established.

"A. The prosecution did not establish that the said witness, under ten years of age, understood the nature of an oath.

"III. The sentence imposed upon the Plaintiff in Error is excessive, cruel and unusual punishment."

■ From our review of the record and an examination of defendant's briefs and the authorities cited in support of his position, we conclude that the judgment should be affirmed.

The disposition of the alleged errors requires the application of certain legal principles to the factual background as it was developed in the record. The record discloses: At 3:43 a.m. the Pueblo Police Department received telephonic advice that two women had been stabbed at 1922 West Street in Pueblo. Two police officers arrived at the scene shortly before 4:00 a.m. They obtained a description of the assailant from a Mrs. Miller, one of the victims, and Seena Gay Reeves, the nine-year-old daughter of the other victim. She described him as a tall, thin colored man with a mustache, wearing dark pants and a light-colored shirt. One of the officers, over his car radio transmitter, called all available cars in the area advising of the offense and giving the description of the perpetrator.

Within a few minutes a third officer radioed that he was stopping an automobile at 14th and West Streets, approximately five blocks from the scene of the crime. The third officer and his partner brought the driver of the automobile to 1922 West Street. The suspect was escorted to the porch of the Reeves' home and as he

entered the house, Seena Gay Reeves looked at the man and shouted, "That's him." The officers testified that upon entering the home, they observed that Mrs. Reeves' clothing was pretty well covered with blood, that she had blood on her face, arms, and hands, and there was blood on the floor.

Mrs. Miller had also been stabbed and her clothing was bloody. Between 4:15 and 4:30, the two women were attended by a doctor at a Pueblo hospital. By 4:50 a.m., the defendant had been given *Miranda* warnings and was being interrogated at the police station.

The primary identification came from the lips of the nine-year-old girl. She testified that Mrs. Miller and her mother had returned home late that night (actually it was about 1:30 a.m.); that she was aware of their coming home but that she did not get up at that time. Some time later she had to go to the bathroom where a light was left burning all night. While she was in the bathroom she heard a strange noise coming from the living room which was visible from the bathroom. She went to the living room and saw a man lying on Mrs. Miller and apparently striking her. Mrs. Miller screamed and struck the assailant with a table lamp. She got up, went out the front door, and ran to a neighbor's house and called the police. The assailant then went to the bedroom of Mrs. Reeves. Apparently he struck her in the face, cut her around the neck and head and several places on her torso. The assailant then left the house by way of the back door.

After the defendant was apprehended and returned to the scene of the crime, one of the officers observed that "He had blood on his shirt and the fly on the front of his pants was unzipped."

From the time of the offense, approximately 3:35 a.m. to shortly after 4:00 a.m. when the police arrived at the Reeves' home with the defendant, only about one-half hour elapsed.

We turn now to a consideration of the assignments

of error. Defendant first contends that there was insufficient evidence to support the verdict of guilty as to the charges of assault with a deadly weapon.

I.

■ With reference to this contention, the testimony of Seena Gay Reeves, an eyewitness, in which she spontaneously and unequivocally identified the defendant as the culprit, the testimony of the police officers as to apprehension of the defendant almost immediately after the commission of the offense in the vicinity of the victims' home, and the condition of the defendant's clothing, is sufficient evidence to support the verdicts of the jury.

■■ A. In reference to the failure of the police to determine the substance on defendant's knife, there is nothing in the law which requires the police to follow every lead which is developed in the course of a criminal investigation to its ultimate conclusion. The defendant knew whether the substance on the knife (as well as on his clothing) was human or animal blood. If he desired to establish at the trial, as he claimed during preliminary investigative inquiry by the police that the substance was animal blood, he could have had a chemical analysis made and introduced it into evidence.

We are cognizant of *Miller v. Pate*, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690, where the district attorney used the defendant's shorts in evidence, without disclosing to defendant that the stains were paint rather than blood, when he knew the true facts prior to trial. The United States Supreme Court held this was a denial of due process. This is not a *Miller v. Pate* situation. As a matter of fact, Miller, prior to his trial in an Illinois court, filed a motion for an order permitting a scientific inspection of the physical evidence the prosecution intended to introduce. The motion was resisted by the prosecution and denied by the court. Also, there was no eyewitness to the crime and the shorts were found in a barn, a mile from the scene of the crime. The defendant denied owning the shorts. According to the United States

Supreme Court opinion, the true facts were not disclosed by the prosecution until the habeas corpus hearing.

B. Defendant, in support of his contention that he was not given an opportunity to confront Mrs. Miller, argues that:

" . . . Inasmuch as she was the complaining witness who by her Complaint initiated one of the counts of assault with a deadly weapon, the Plaintiff in Error respectfully submits that he was denied a right to confront the said witness, contrary to the guarantee of the right of confrontation set forth in Section 16 of Article 2 of the *Constitution of the State of Colorado.* A number of witnesses called by the People testified with regard to Mrs. Miller. Her Complaint was thus made for her by others who nonetheless did not have knowledge of all of the events of that evening and the Plaintiff in Error was therefore, deprived of his right to confront the said complaining witness and cross-examine her."

The attorney general, answering the defendant's contention, cites *Warren v. People,* 121 Colo. 118, 213 P.2d 381; *Militello v. People,* 95 Colo. 519, 37 P.2d 527; *Holt v. People,* 89 Colo. 324, 1 P.2d 921; *Ware v. People,* 76 Colo. 38, 230 P. 123; and *Willis v. People,* 73 Colo. 369, 215 P. 854. These cases stand for the proposition that the district attorney is not obliged to call all witnesses endorsed upon the information.

The defendant attempts to distinguish the cited cases on the ground that in those cases there was an opportunity to interview the witnesses prior to trial, or they were present at the trial. We do not accept the distinction. What the defendant fails to distinguish is the difference between the charge of the offense and the proof of the offense.

The information, which was based to a large extent upon what the officers had learned from Mrs. Miller, was the vehicle by which the People advised the defendant of the crime he was alleged to have committed. It was not used, and necessarily could not be

used, as evidence to prove the charge. Proof of the elements of the offense charged may be established not only by the testimony of the victim, but also they may be proved by any other competent evidence. The defendant cannot complain here. He was afforded an opportunity to cross-examine every witness used to prove the several elements of the offense with which he was charged.

## II.

■ Defendant challenges the competency of Seena Gay Reeves to testify, because she was only nine years old at the time. The pertinent statute, C.R.S. 1963, 154-1-6(1)(c), disqualifies as witnesses: "Children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are examined or of relating them truly." The competency of a child as a witness under the prescribed age is a question addressed to the sound discretion of the trial court. *Wesner v. People,* 126 Colo. 400, 250 P.2d 124; *Victor v. Smilanich,* 54 Colo. 479, 131 P. 392.

■ The defendant not only did not make any contemporaneous objection to the introduction of her testimony, but insisted that it was not necessary for the district attorney to "lead" her because "Seena Gay seems aware of circumstances about her, and if she is simply asked to describe events which she saw, she could do this." There was no error, but if there had been, defendant by his tactics waived it. *Pillod v. People,* 119 Colo. 116, 200 P.2d 919; *Faden v. Estate of Midcap,* 112 Colo. 573, 152 P.2d 682.

## III.

■ Defendant's last contention is that the sentence imposed amounts to excessive, cruel, and unusual punishment, because the defendant must serve an entire term before being eligible for probation on the second consecutive term. He contends that the second assault following so closely upon the first assault amounted to one transaction. This is clearly not the case as the two

women were in two different places and were not assaulted contemporaneously. The sentences provided are within the limits provided by the statute, C.R.S. 1963, 40-2-34. If a sentence imposed is within limits fixed by statute, it will not be disturbed on review.

We find no reversible error.

The judgment is affirmed.

WILLIAM L. GOBIN, District Judge,* and EARL A. WOLVINGTON, District Judge,* participating.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE ERICKSON not participating.

*District Judges sitting under assignment by the Chief Justice under provisions of article VI, section 5(3) of the constitution of Colorado.