650 P.2d 1302 (1982)
The PEOPLE of the State of Colorado, Petitioner-Appellee, In the Interest of W.C.L., Jr., Minor Child-Appellant,
and Concerning W.L. and M.L., Respondents-Appellees.
No. 81CA0200.
Colorado Court of Appeals, Div. I.
April 8, 1982.
Rehearings Denied April 29, 1982.
Certiorari Granted August 23, 1982.
*1303 J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sp. Asst. Atty. Gen., Susan P. Mele, Asst. Atty. Gen., Denver, for petitioner-appellee.
J. Gregory Walta, Colorado State Public Defender, Deborah S. Waldbaum, Deputy State Public Defender, Denver, for minor child-appellant.
SILVERSTEIN[*], Judge.
W.C.L., Jr., was found guilty by a jury of acts which if committed by an adult would constitute sexual assault on a minor under § 18-3-405, C.R.S. 1973 (1978 Repl. Vol. 8). On appeal he asserts two grounds of error: The admission of an out-of-court statement of the victim as an excited utterance, and the admission of the victim's out-of-court statements to a doctor during examination by the doctor under the medical diagnosis exception to the hearsay rule.
The victim was just under four years old at the time of the assault. The appellant was sixteen, and is the victim's uncle. From February 1980 until June 1980, when the charge was brought, appellant lived with the victim's family. It is undisputed that the victim had been subjected to several incidents of sexual assault, the sole disputed issue being the identity of the perpetrator.
The trial court, after a hearing in chambers, determined that the victim was incompetent to testify. No objection was made to this ruling. Therefore, the People sought to introduce out-of-court statements made by the victim (the child). Two of such tendered statements were admitted.
The undisputed circumstances surrounding the first statements to which the child's aunt testified are: The child had spent the day with the aunt and her young children, and the aunt was preparing the children for baths before going to bed. While all the children were completely undressed, the child faced the aunt's six-year-old son, spread her legs, and said, "Get me." At that time, the aunt spoke the child's name in a tone that apparently startled her. Shortly thereafter, when the child was being bathed, the aunt asked her where she had learned that, and the child replied, "Uncle W [appellant] tickles me." The aunt then asked where the appellant tickled her, and the child pointed to her genitals. Nothing further was said at that time, and the aunt reported the incident to the authorities.
The second testimony at issue was that of Dr. Kerns who examined the child as part of the Child Protection Team of the University of Colorado Medical Center, and who testified after having been qualified as an expert in the fields of pediatrics and child abuse. His physical examination revealed that the child had had sexual contacts, including penetration of the vagina. The doctor testified that after the child told him she had had sexual contact with appellant, the following conversation took place:
"I asked: `What does Uncle W. do to you?' and [the child] said: `He touches me here,' and pointed to her genitals. I asked: `With his fingers?' and [the child] said: `No.' And I asked: `With what?' and [the child] said: `With his cock.' "I asked: `Does he hurt you with it?' She said: `Yes.'"
The dates when any of the incidents took place were never determined, except as having occurred between the latter part of February and the first week in June 1980.
*1304 We hold the statements were properly admitted, though on different grounds than those relied on by the trial court.
As to the gesture made by the child, and her statements to the aunt, the trial court determined that they were admissible as spontaneous utterances under Colorado Rules of Evidence 803(1). That rule permits the admission of hearsay statements made spontaneously "while the declarant was perceiving the event ...." Here, although the gesture was spontaneous, it was not spontaneous as to the sexual abuse.
Also, Lancaster v. People, Colo., 615 P.2d 720 (1980), held that: "The declaration ... may be admissible even though subsequent to the occurrence, provided it is near enough in time to allow the assumption that the exciting influence continued." (emphasis in original) Here, however, there is no evidence as to when the occurrence or occurrences took place, except that the testimony establishes that the event could not have occurred the same day that the statements and gesture were made. Therefore, Colorado Rules of Evidence 803(1) is not applicable.
The statements made to the doctor were admitted as statements made for purposes of medical diagnosis or treatment, as set forth in Colorado Rules of Evidence 803(4). This exception to the hearsay rule is based on the premise that the patient's strong motive to tell the truth, because diagnosis and treatment depend in part on what the patient says, guarantees the trustworthiness sufficiently to allow the exception. United States v. Iron Shell, 633 F.2d 77 (8th Cir. 1980). There is nothing in the record here which would establish that the victim understood, or was aware of, the purpose of the questioning by the doctor. Therefore, without such a foundation, the basis for the exception was lacking.
However, the failure of the statements to fit into the framework of the codified categories of the exceptions to the hearsay rule does not inevitably preclude their admission. "Where proffered evidence is trustworthy and necessity compels its admission, courts will admit the testimony as an exception to the hearsay rule." People v. Romero, 42 Colo.App. 20, 593 P.2d 365 (1978); Good v. A.B. Chance Co., 39 Colo.App. 70, 565 P.2d 217 (1977).
When the tendered evidence falls within a firmly rooted hearsay exception, such as Colorado Rules of Evidence 803(1), its reliability can be inferred without more. Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); Lancaster v. People, supra. On the other hand, when the tendered declaration is made under circumstances which do not comport with the recognized and codified exceptions, the two requirements namely, necessity and circumstantial guaranty of trustworthiness, must be established through a proper foundation. See G. & C. Merriam Co. v. Syndicate Publishing Co., 207 F. 515 (2d Cir. 1913).
Further:
"[T]he trustworthiness of a statement should be analyzed by evaluating not only the facts corroborating the veracity of the statement, but also the circumstances in which the declarant made the statement and the incentive he had to speak truthfully or falsely."
U.S. v. Bailey, 581 F.2d 341, 349 (3d Cir. 1978).
We are not unmindful of the fact that Federal Rule of Evidence 803(24) was not codified in the Colorado Rules of Evidence because, as stated in the Committee Comment: "There are flimsy guidelines in the Federal rule, which allow too much discretion to the trial court in `prescribing guarantees of trustworthiness.'" However, we are persuaded that when, by corroborating evidence, a foundation is laid which clearly establishes an incentive to tell the truth, and no incentive to falsify, and where the necessity is also established, the statements may properly be admitted as a qualified exception to the hearsay rule. U.S. v. Bailey, supra; Good v. Chance, supra.
Here, the necessity was clearly established when the trial court ruled that the victim was incompetent to testify. Dallas County v. Commercial Assurance Co., 286 F.2d 388 (5th Cir. 1961); 5 J. Wigmore, *1305 Evidence § 1422 (Chadburn Rev. 1974). Further, the reliability of the witnesses was not questioned.
In order to determine whether adequate indicia of reliability existed, the trial court conducted in camera hearings of both witnesses. The testimony at these hearings and in open court disclosed the following additional facts.
The doctor was employed, at the time of his examination of the child, as a faculty member of the University of Colorado Medical Center. He served as a staff pediatrician for the Child Protection Team at the university hospital, and in that capacity, conducted his medical examination of the child. He was involved, either as primary physician or as consultant, in approximately 100 cases of sexual abuse of children.
Based on his personal experience and his study of the literature on the subject, it was his medical opinion, as well as the opinion of other experts in the field, that: "if a young child tells you that they have had sexual activity with somebody, then you had best believe it; [and] that young children do not lie or fabricate when they give you really graphic portrayals of sexual activity. That means they have experienced it."
In conducting his examination, the doctor also found evidence of physical abuse which the child said had been inflicted by her parents. However, when asked whether her father had had sexual contact with her, she said he had not. This fact was fortified by evidence introduced by defendant. Three of the witnesses for the defensethe victim's mother and father and defendant himselfall testified that during the period in question, the victim was never left alone with her father, and that defendant had baby sat with the victim five or six times.
The doctor said it was his professional opinion that the child "experienced sexual activity as she had described it." He further testified that, as is usual in cases of sexual abuse on pre-school children, the child very matter-of-factly described the contact.
The evidence relative to the gesture of the victim and the child's statement to her aunt were likewise made in a matter-of-fact manner which indicated a lack of awareness of any wrongdoing, and which supported the trial court's conclusion that "the circumstances indicated the absence of any intellectual contrivances by the child of the events which she related to [the aunt]."
We conclude that the corroborating evidence, as set forth above, constituted a foundation which established the truthfulness of the statements, and a lack of incentive to speak falsely which fulfilled the requirements as set forth in United States v. Bailey, supra, and People v. Romero, supra. See People v. Stewart, 39 Colo.App. 142, 568 P.2d 65 (1977). The statements were, therefore, properly admitted.
The judgment is affirmed.
COYTE and SMITH, JJ., concur.
NOTES
[*] Retired Court of Appeals Judge sitting by assignment of the Chief Justice under provisions of the Colo. Const., Art. VI, Sec. 5(3), and § 24-51-607(5), C.R.S. 1973 (1981 Cum. Supp.)